UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MERLIN TRANSPORT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:11-cv-365-M |
| | § | |
| FRANK DENTON, MIKE AREISMENDEZ, | § | |
| LUANN ROBERTS MORGAN, FRED N. | § | |
| MOSES, DEBORAH YURCO, DOE 1 and | § | |
| DOE 2, the Commissioners of the Department | § | |
| of Licensing and Regulation, a Department of | § | |
| the State of Texas; and WILLIAM H. KUNTZ, | § | |
| the Executive Director of the Department of | § | |
| Licensing and Regulation, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss [Docket Entry #4]. For the reasons stated below, the Motion is **GRANTED**.

**I.   BACKGROUND**

Plaintiff Merlin Transport, Inc. commenced this action on February 22, 2011, seeking a declaratory judgment that several sections of the Texas Occupations Code and Texas Administrative Code relating to the towing and storage of vehicles are preempted by the Interstate Commerce Act (ICA), as amended, 49 U.S.C. § 14501 (2006). Merlin is a towing company engaged in the business of consensual and nonconsensual towing and storage. When Merlin brought this suit, it was already defending an administrative enforcement action initiated on August 12, 2010, by the Texas Department of Licensing and Regulation (the "Department") for various claimed violations of the Texas Occupations Code and Texas Administrative Code.

1

(*See* App. to Defs.' Mot. Dismiss 4–10 [hereinafter App.].)  Merlin has raised the same preemption issue in the enforcement action that it raises in this suit.  According to a Joint Report submitted by the parties, as of May 11, 2011, there were no actions scheduled in the administrative proceeding.  (Joint Report 3, ECF No. 20.)

On March 21, 2011, the Defendants filed a Motion to Dismiss in this Court, raising three grounds for dismissal: (1) that Merlin's suit is barred by Eleventh Amendment Sovereign Immunity; (2) that the ICA does not create a private right of action; and (3) that the Court must abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971).  On April 11, 2011, Merlin filed its Response to the Motion to Dismiss, as well as an Amended Complaint.  The Amended Complaint altered the named defendants, eliminating the Eleventh Amendment issue, and added a request for preliminary injunction, for which it sought a hearing at the "earliest possible time."  The Defendants filed their Reply on April 25, 2011.  On May 3, 2011, the Court denied the Defendants' second ground for dismissal—that the ICA does not create a private cause of action—and set a hearing for the parties to present oral argument on the *Younger* abstention issue and, only if the Court declined to abstain under *Younger*, to proceed to a hearing of Merlin's request for preliminary injunction.

The Court held a hearing on June 30, 2011, and after oral argument from the parties, announced its decision to grant the Defendants' Motion to Dismiss and abstain under *Younger*.  The Court stayed final judgment so that it could more fully explain the reasons for its holding in this Opinion.

II.   ANALYSIS

The *Younger* abstention doctrine implements "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."

*Middlesex Cnty. Ethics. Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Although the doctrine was first applied to prevent interference in ongoing state criminal proceedings, its applicability has since been expanded to include other types of proceedings that are "'judicial' in nature," including certain administrative proceedings. *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 520 (5th Cir. 2004) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986)); *see Middlesex Cnty. Ethics. Comm.*, 457 U.S. at 432 ("The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved.").

Courts apply a three-prong test to determine whether the *Younger* abstention doctrine applies in a particular case: "(1) the dispute must involve an 'ongoing state judicial proceeding,' (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges." *Tex. Ass'n of Bus.*, 388 F.3d at 519 (quoting *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 189 (5th Cir. 1996)). If this test is met, a federal court will abstain from enjoining the parallel state proceeding and dismiss the federal suit, unless one of certain "narrowly delimited exceptions . . . apply." *Id.* One such exception arises in cases where the federal-suit plaintiff brings a preemption claim that is "facially conclusive."[1] *See New Orleans Pub. Serv., Inc. v. Council of New Orleans* (*NOPSI I*), 491 U.S. 350, 367 (1989); *Colonial Life & Accident Ins. Co. v. Medley*, 572 F.3d 22, 26–27 (1st Cir. 2009); *Worldwide Moving & Storage, Inc. v. District of Columbia*,

---

[1] This is a context-specific application of the more general exception to *Younger* applicable to cases where "the federal plaintiff will 'suffer irreparable injury' absent equitable relief [from the federal court]." *New Orleans Pub. Serv., Inc. v. Council of New Orleans* (*NOPSI I*), 491 U.S. 350, 367 (1989) (quoting *Younger*, 401 U.S. at 43–44). One way that irreparable injury may be established is "by a showing that the challenged state statute is '"flagrantly and patently violative of express constitutional prohibitions . . . ."' *Id.* (alteration in original) (quoting *Younger*, 401 U.S. at 53–54); *accord Tex. Ass'n of Bus.*, 388 F.3d at 519. In *NOPSI I*, the Supreme Court noted that declaring a state law preempted is just shorthand for saying that the law violates the Supremacy Clause. 491 U.S. at 367. In light of this observation, the Court suggested that a facially conclusive claim of preemption may likewise be the type of flagrant and patent constitutional violation "sufficient to render abstention inappropriate." *Id.*

3

445 F.3d 422, 427 (D.C. Cir. 2006); *Hughes v. Att'y. Gen.*, 377 F.3d 1258, 1265 (11th Cir. 2004); *United States v. Kentucky*, 252 F.3d 816, 826 (6th Cir. 2001); *see also Midwestern Gas Transmission Co. v. McCarty*, 270 F.3d 536, 539 (7th Cir. 2001) (holding that abstention was inappropriate when the state asserted interests that "clearly are under exclusive federal control").

Merlin does not dispute the first element of the three-part test for *Younger* abstention—that the administrative enforcement action against it is an ongoing state judicial proceeding. Rather, Merlin argues that the ongoing administrative proceeding does not implicate an important state interest and does not afford an adequate opportunity to raise constitutional challenges. Further, Merlin argues that even if these latter two elements are met, its preemption claim is facially conclusive and that, therefore, the Court should not abstain under *Younger*.

The Court first addresses Merlin's contention that its preemption claim is facially conclusive, and then turns to the second and third elements of the *Younger* analysis.

A. "Facially Conclusive" Preemption

Although the phrase "facially conclusive" has thus far evaded precise definition, courts that have applied the exception have construed it to be narrow in scope, declaring that "only the clearest of federal preemption claims" warrants departure from *Younger*.[2] *Hughes*, 377 F.3d at 1265; *accord Worldwide Moving*, 445 F.3d at 427; *Eagle Air Med Corp. v. Col. Bd. of Health*, 570 F. Supp. 2d 1289, 1291 (D. Col. 2008). A merely "substantial" preemption claim is not facially conclusive. *NOPSI I*, 491 U.S. at 365. Nor is a preemption claim that "requires further factual inquiry," *id.* at 367, or "detailed analysis" of federal or state law. *Colonial Life*, 572 F.3d at 28; *GTE Mobilnet of Ohio v. Johnson*, 111 F.3d 469, 478 (6th Cir. 1997).

---

[2] Although the Fifth Circuit has yet to address the specific issue of facially conclusive preemption claims, in general it has characterized exceptions to *Younger* as "narrowly delimited," thus comporting with the narrow construction given to the facially conclusive exception by other courts. *See Tex. Ass'n of Bus.*, 388 F.3d at 519.

Merlin bases its claims on the ICA's express preemption provision, which generally prohibits

> a State [or] political subdivision of a State . . . [from] enact[ing] or enforc[ing] a law [or] regulation . . . related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.[3]

49 U.S.C. § 14501(c)(1) (2006). The Supreme Court has interpreted this provision to mean that state laws or regulations "'*having a connection with, or reference to*' carrier 'rates, routes, or services' are pre-empted." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) (quoting *Morales v. Trans World Airlines*, 504 U.S. 374, 384 (1992)). Although such preemption may occur "even if a state law's effect on rates, routes or services 'is only indirect,'" *id.* (quoting *Morales*, 504 U.S. at 386), the statute's preemption provision does not reach "state laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner,'" *id.* at 371 (quoting *Morales*, 504 U.S. at 390).

However, the ICA contains a number of express exceptions to its general preemption rule, including the so-called safety regulation exception, which exempts from the general rule state laws whose preemption would "restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. 14501(c)(2); *see VRC LLC v. City of Dallas*, 460 F.3d 607, 609 (5th Cir. 2006). The safety regulation exception has been "given broad construction." *VRC*, 460 F.3d at 612. Thus, statutes and regulations that are "reasonably related and genuinely responsive to safety concerns" are not preempted, even if they also work to accomplish economic regulation or consumer protection. *Id.* at 615.

Merlin raises two arguments that its preemption claim is facially conclusive. First, Merlin argues that one of the challenged statutes—Texas Occupations Code § 2303.054—clearly

[3] Tow trucks are "motor carrier[s] of property" under the statute. *City of Columbus v. Ours Garage & Wrecker Serv. Inc.*, 536 U.S. 424, 429 (2002).

relates to the price of towing under the Supreme Court's reasoning in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), and is thus preempted. Second, Merlin argues that the Supreme Court's decision in *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008), significantly narrowed the safety regulation exception, implicitly overturning several prior circuit court decisions, including two from the Fifth Circuit, that held several state and local towing regulations to be safety regulations exempt from the general preemption provision. This Court finds neither argument persuasive.

1. Texas Occupations Code § 2303.054 and *Morales*

Section 2303.054 of the Texas Occupations Code, entitled "Rules Restricting Advertising or Competitive Bidding," states,

> (a) The commission may not adopt a rule restricting advertising or competitive bidding by a person licensed under this chapter *except to prohibit a false, misleading, or deceptive practice*.
>
> (b) In its rules to prohibit a false, misleading, or deceptive practice, the commission may not include a rule that:
>
>   (1) restricts the person's use of any advertising medium;
>
>   (2) restricts the person's personal appearance or the use of the person's voice in an advertisement;
>
>   (3) relates to the size or duration of an advertisement by the person; or
>
>   (4) restricts the person's advertisement under a trade name.

Tex. Occ. Code § 2303.054 (West, Westlaw through 2011 Reg. Sess.) (emphasis added). Merlin argues that this provision's allowance for rules regulating false and deceptive advertising renders it clearly preempted under the Supreme Court's reasoning in *Morales*.

*Morales* involved the preemption provisions of the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b) (2006), which are identical to the ICA's preemption provisions and have

6

therefore been interpreted similarly. 504 U.S. at 378–79; *see Rowe*, 552 U.S. at 370 (following *Morales* in interpreting the ICA). At the center of the dispute were state guidelines[4] that restricted and set detailed requirements for the content and format of airline print and broadcast advertisement related to fares. *Morales*, 504 U.S. at 386–87.[5] The Court held that the guidelines' restrictions "relate[d] to" rates, and were thus preempted, because they expressly referenced airfares, and because even absent the express reference to fares, "it [was] clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares." *Id.* at 388.

Merlin argues that § 2303.054 of the Texas Occupations Code presents a facially conclusive case of preemption because, like the guidelines in *Morales*, it is a "consumer protection regulation of false or misleading advertising." (Pl.'s Resp. Br. 9, ECF No. 12.) However, Merlin overlooks important differences between § 2303.054 and the guidelines in *Morales*. The guidelines regulated how airlines could advertise their prices, and thus "'relat[ed]

---

[4] Although these guidelines were not themselves binding regulations, the Texas Attorney General claimed that they "explain[ed] in detail how existing state [consumer protection] laws appl[ied] to air fare advertising and frequent flyer programs," and the Attorney General sent formal notices of intent to sue to several air carriers who were not in compliance with the guidelines. *Id.* at 379.

[5] The Court in *Morales* described the guidelines in detail:
> Section 2.1, governing print advertisements of fares, requires "clear and conspicuous disclosure [defined as the lesser of one-third the size of the largest typeface in the ad or ten-point type] of restrictions such as" limited time availability, limitations on refund or exchange rights, time-of-day or day-of-week restrictions, length-of-stay requirements, advance-purchase and round-trip-purchase requirements, variations in fares from or to different airports in the same metropolitan area, limitations on breaks or changes in itinerary, limits on fare availability, and "[a]ny other material restriction on the fare." Section 2.2 imposes similar, though somewhat less onerous, restrictions on broadcast advertisements of fares; and § 2.3 requires billboard fare ads to state clearly and conspicuously " 'Substantial restrictions apply' " if there are any material restrictions on the fares' availability. The guidelines further mandate that an advertised fare be available in sufficient quantities to "meet reasonably foreseeable demand" on every flight on every day in every market in which the fare is advertised; if the fare will not be available on this basis, the ad must contain a "clear and conspicuous statement of the extent of unavailability." § 2.4. Section 2.5 requires that the advertised fare include all taxes and surcharges; round-trip fares, under § 2.6, must be disclosed*388 at least as prominently as the one-way fare when the fare is only available on round trips; and § 2.7 prohibits use of the words " 'sale,' 'discount,' [or] 'reduced' " unless the advertised fare is available only for a limited time and is "substantially below the usual price for the same fare with the same restrictions."

504 U.S. at 387.

7

to rates" of air carriers. Section 2303.054, on the other hand, does not specifically relate to the price of towing, but only allows for the creation of rules that prohibit false and misleading advertising generally.

Further, notwithstanding the absence of direct references to price, § 2303.054 does not directly relate to towing at all. The statute governs advertising "by a person licensed under [Chapter 2303 of the Texas Occupations Code]," which is titled "Vehicle Storage Facilities." A vehicle storage facility is defined as "a garage, parking lot, or other facility that is . . . owned by a person other than a governmental entity; and . . . used to store or park at least 10 vehicles a year." Tex. Occ. Code. § 2303.002. Thus, even if § 2303.054 relates to price by allowing regulations restricting false or deceptive advertising, it relates to the price of parking lots, not of tow trucks, and only the latter is a "motor carrier of property" covered by the ICA's preemption provision.

In light of the significant differences between this case and *Morales,* the Court cannot conclude that § 2303.054 presents one of those "clearest preemption claims" that can be called facially conclusive. Of course, Merlin may conceivably be able to present an argument or evidence showing that restrictions on parking lot prices or services have "the forbidden significant effect" on towing prices or services. *Morales*, 504 U.S. at 388. But the necessity of such "further factual inquiry" and "detailed [legal] analysis" merely confirms that Merlin's claim regarding § 2303.054 is not a facially conclusive.

  2. Safety Regulation Exception

Merlin next argues that §§ 2308.057, .158, .252–.257, and .301–.303 of the Texas Occupations Code present facially conclusive preemption claims because they are not sufficiently related to motor vehicle safety to fall within the ICA's safety regulation exception,

8

which Merlin claims was recently narrowed by the Supreme Court in *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008). This argument assumes, of course, that these provisions relate to the price, route, or service of towing, such that they would be preempted absent the safety regulation exception. Assuming, without deciding, that this is so, Merlin's claim that *Rowe* places the challenged provisions outside of the safety regulation exception is not facially conclusive.

As previously noted, the Fifth Circuit has interpreted the safety regulation exception broadly to exempt from the ICA's preemption provision statutes and regulations that are "reasonably related and genuinely responsive to safety concerns." *VRC LLC v. City of Dallas*, 460 F.3d 607, 615 (5th Cir. 2006). The Fifth Circuit has at least twice applied the safety regulation exception to towing regulations, both times concluding that the regulations fell within the exception. *Id.*; *Cole v. City of Dallas*, 314 F.3d 730, 734 (5th Cir. 2002). In *VRC LLC v. City of Dallas*, the plaintiff towing company challenged a city ordinance that required signs warning of the threat of towing to be posted on private property twenty-four hours before a vehicle is towed without the owner's consent. 460 F.3d at 608. The court reviewed evidence of the City's motive and purpose in enacting the ordinance, and concluded that the ordinance was reasonably related and genuinely responsive to the City's concern about "violent confrontations between unwarned vehicle owners and tow truck drivers" that could occur without clear signage warning of the risk of towing. *Id.* at 615.

Similarly, in *Cole v. City of Dallas*, the plaintiff, after being denied a wrecker driver's permit due to a prior criminal conviction, challenged the city ordinance that prohibited a person from receiving a wrecker driver's permit if he had been convicted of certain crimes. 314 F.3d at 732. After reviewing the ordinance and its express concern for safety, the court held that the

9

ordinance was clearly exempt from preemption under the safety regulation exception: "That the criminal history regulation has, at its core, concern for safety is manifest. It is difficult to imagine a regulation with a more direct protective nexus or peripheral economic burden." *Id.* at 735.

Merlin does not argue that the challenged towing regulations present facially conclusive preemption claims under the Fifth Circuit's reasoning in *VRC* and *Cole*. In fact, at least some of the provisions are exactly the type held to fall within the safety regulation exception. *See* Tex. Occ. Code §§ 2308.301–.303 (requiring and regulating signs for nonconsensual towing); § 2308.057 (allowing the adoption of rules for denial of tow truck permits based on prior criminal convictions of applicants). Rather, Merlin argues that the Fifth Circuit's holdings were effectively overruled by the Supreme Court in *Rowe*.

In *Rowe*, several transport carrier associations sued in federal court, claiming that two provisions of a Maine law related to the delivery and sale of tobacco were preempted under the ICA because the provisions had a significant effect on carrier services. 522 U.S. at 367. One of the challenged provisions required tobacco retailers, when receiving or shipping tobacco, to "'utilize a delivery service' that provides a special kind of *recipient-verification* service." *Id.* at 368 (quoting Me. Rev. Stat. Ann. tit. 22, § 1555-C(3)(C) (2004)). The other provision forbade "any person 'knowingly' to 'transport' a 'tobacco product' to 'a person' in Maine unless either the sender or the receiver has a Maine [tobacco-retailer] license," and provided certain circumstances under which a person was "deemed to know" that a package contained a tobacco product. *Id.* at 369 (quoting § 1555-D).

The Court held that both provisions were related to the service of carriers transporting tobacco products because they would require such carriers to offer tobacco delivery services they

might not otherwise offer. *Id.* at 372–73. The state contended, however, that the provisions should be exempt from preemption because they were enacted to protect citizens' public health by regulating the dangerous activity of underage smoking. *Id.* at 373–74. The Court disagreed, holding that "federal law [does not] create[] an exception [for public health], exempting state laws that it would otherwise pre-empt." *Id.* at 374. The Court explained, "The [ICA] says nothing about a public health exception. To the contrary, it explicitly lists a set of exceptions (governing motor vehicle safety, certain local route controls, and the like), but the list says nothing about public health." *Id.*

According to Merlin, *Rowe*'s rejection of a public health exception also overturns or calls into doubt the Fifth Circuit's broad interpretation of the safety regulation exception, at least as it relates to towing regulations. This reading is dubious on its face in light of the sharp distinction drawn in *Rowe* between the safety regulation exception and the proposed public health exception. At the least, Rowe's express distinction between the two prevents this Court from concluding, without detailed legal analysis, that the Fifth Circuit's reasoning in *VRC* and *Cole* is no longer valid. That being so, Merlin's preemption claims are not facially conclusive.

Neither *Morales* nor *Rowe* render Merlin's preemption claims facially conclusive. Therefore, if the three-part test for *Younger* abstention is satisfied, the Court must abstain and dismiss this case.

B.     Important State Interest

There being no dispute regarding the first element of the three-part test for *Younger* applicability, the Court proceeds to examine the second element, which requires "an important state interest in the subject matter of the proceedings must be implicated." *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004). In *NOPSI I*, the Supreme Court explained the proper

11

application of this element:

> When we inquire into the substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the outcome of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what we look to is the importance of the generic proceedings to the State.

491 U.S. 350, 365 (1989). Further, when the proceedings implicate a "function[] traditionally associated with the police powers of the States," the state's interest is generally sufficient for purposes of *Younger*. *Id.*

In this case, then, the question is not whether Texas has a substantial, legitimate interest in enforcing a number of towing regulations against Merlin, but whether it has a substantial, legitimate interest in regulating towing generally. Towing regulations like those challenged by Merlin have been held to be exercises of the "traditional state police power over safety." *VRC*, 460 F.3d at 612 (quoting *City of Columbus v. Ours Garage & Wrecker Serv. Inc.*, 536 U.S. 424, 439 (2002)); *accord id.* at 615. Thus, because Texas's interest in regulating towing is an exercise of its traditional police power over safety, the interest is sufficiently important to justify abstention under *Younger*.

However, Merlin argues that Texas does not have an interest in regulating towing because such regulations are preempted by the ICA. As the Supreme Court observed in *NOPSI I*, a plaintiff who makes such an argument essentially "contends [that] a district court presented with a pre-emption based request for equitable relief should take a quick look at the merits; and if upon that look the claim appears substantial, the court should endeavor to resolve it." 491 U.S. at 364. Rejecting that contention, the Supreme Court held that "the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." *Id.* at 365.

Thus, in the words of one court, Merlin's argument "put[s] the cart before the horse and would have [the Court] decide the merits of [Merlin's] preemption claims in determining whether it is appropriate for [the Court] to address the substance of these claims in the first place." *Eagle Air Med Corp. v. Col. Bd. of Health*, 570 F. Supp. 2d 1289, 1294 (D. Col. 2008). Texas has a substantial, legitimate interest in regulating towing as part of its traditional police power over safety, regardless of whether Merlin will ultimately prevail on its preemption claim. Therefore, the second element for *Younger* applicability is met.

C.   Adequate Opportunity to Raise Constitutional Challenges

The third prong of the test for *Younger* applicability is whether the state proceeding affords an adequate opportunity to raise constitutional challenges. *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (2004). Merlin argues that the administrative enforcement action brought against it by the Department cannot provide a full and fair trial because the State Office of Administrative Hearings (SOAH) is not a competent, unbiased tribunal.[6] Merlin bases this argument on the following provision:

> (e) A state agency may change a finding of fact or conclusion of law made by the administrative law judge, or may vacate or modify an order issued by the administrative judge, only if the agency determines:
>
> (1) that the administrative law judge did not properly apply or interpret applicable law, agency rules, written policies provided under Subsection (c), or prior administrative decisions;
>
> (2) that a prior administrative decision on which the administrative law judge

---

[6] Merlin bases this argument on the Supreme Court's decision in *Gibson v. Berryhill*, 411 U.S. 564 (1973), in which the Court stated that abstaining under *Younger* "presupposes the opportunity to raise and have decided by a competent state tribunal the federal issues involved." *Id.* at 577. The Court in *Gibson* described this as a "predicate" for *Younger* abstention, and Merlin invokes this characterization by stating that *"[i]n order to even reach the question of Younger abstention*, there is a predicate assumption that the state proceedings will offer litigants a fair and full trial." (Pl.'s Resp. Br. 5 (emphasis added).) However, in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, in which the now-familiar three-factor test for *Younger* abstention was first set out, the Court characterized *Gibson*'s holding not as a separate predicate to the *Younger* inquiry, but as a component of that inquiry's third element—whether the state proceedings afford an adequate opportunity to raise constitutional challenges. 457 U.S. 423, 432 (1982).

13

>relied is incorrect or should be changed; or
>
>(3) that a technical error in a finding of fact should be changed.
>
>The agency shall state in writing the specific reason and legal basis for a change made under this subsection.

Tex. Gov't Code § 2001.058. Merlin contends that the proceedings before SOAH deprive it of a full and fair trial because the Department can change a conclusion of law if it determines that the administrative law judge did not "properly apply or interpret applicable law." Thus, according to Merlin, if the administrative law judge decides the preemption issue in Merlin's favor, the Department could simply change that conclusion of law.

Essentially, Merlin's argument is that the Department's ability to modify the administrative judge's order allows it to act as both investigator and judge in the administrative proceedings. But to prevail on this argument, Merlin "must overcome two strong presumptions: (1) the presumption of honesty and integrity of the adjudicators; and (2) the presumption that those making decisions affecting the public are doing so in the public interest." *Ford Motor Co. v. Tex. Dept. of Transp.*, 264 F.3d 493, 512 (5th Cir. 2001). In other words, Merlin must do more than argue that the structure of the SOAH proceedings creates the potential for bias— Merlin must show that the Department's honesty and integrity are such that it will abuse its ability to modify the administrative law judge's conclusions. *See id.* Merlin has not made such a showing.

Nevertheless, Merlin also contends that Texas administrative agencies "have no power to determine the constitutionality of statutes," and therefore, as a matter of Texas law, cannot afford an adequate opportunity to raise constitutional challenges like preemption. *Tex. State Bd. of Pharmacy v. Walgreens Tex. Co.*, 520 S.W.2d 845, 848 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.). The Defendants dispute this contention, arguing that the right to de novo review of

14

SOAH's legal findings by the state district court in Travis County renders the administrative proceedings sufficient. *See State v. Pub. Util. Comm'n*, 246 S.W.3d 324, 332 (Tex. App.—Austin 2008, pet. filed). Merlin maintains, however, that the right to appeal is irrelevant because it is "entitled to a neutral and detached judge in the first instance." *Ward v. Village of Monroeville*, 409 U.S. 57, 62 (1972).

The Supreme Court has held that, for purposes of the third element of *Younger* abstention, "it is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 629 (1986) (citation omitted) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 436 (1982)). This is true even in cases where the administrative body lacks the legal authority to consider constitutional claims in the first instance. *Middlesex*, 477 U.S. at 629. Thus, even assuming, without holding, that SOAH lacks the power to determine the constitutionality of the challenged statutes, Merlin's opportunity to raise its preemption claim in a de novo appeal to state district court is sufficient to justify this Court's abstention under *Younger*.

### III.   CONCLUSION

This case satisfies the three elements for *Younger* applicability, and Merlin's preemption claim is not facially conclusive. This Court must therefore abstain from exercising jurisdiction in this case, and the Defendants' Motion to Dismiss is **GRANTED**.

**SO ORDERED**.

August 9, 2011.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**